# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| CHICAGO BOARD OPTIONS EXCHANGE, INCORPORATED, | § § § § § § § § § § § | |
| | | Civil Action No. 09 CV 4486 |
| Plaintiff, | | |
| | | Honorable Judge George W. Lindberg |
| v. | | |
| | | Magistrate Judge Jeffrey Cole |
| REALTIME DATA, LLC D/B/A IXO, | | |
| | | |
| Defendant. | | |

# DEFENDANT'S REPLY MEMORANDUM IN SUPPORT
# OF ITS MOTION TO DISMISS FOR
# <u>LACK OF PERSONAL JURISDICTION PURSUANT TO RULE 12(b)(2)</u>

Defendant Realtime Data, LLC d/b/a IXO ("Realtime Data") files this Reply in further support of Realtime Data's Motion to Dismiss the declaratory judgment complaint of Plaintiff Chicago Board Options Exchange, Incorporated ("CBOE") for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2).

In its opposition, CBOE does not dispute that Realtime Data has no Illinois offices, employees or assets, has never conducted business in Illinois, has never bought or sold any products or services in Illinois, and has never attempted to enforce its patent rights in Illinois, including by engaging in litigation activities in this forum (such enforcement activities in the forum are necessary for specific personal jurisdiction in a declaratory judgment action). Instead, CBOE's opposition bases personal jurisdiction *solely* on the ground that Realtime Data commenced litigation in another forum (the Eastern District of Texas) against other companies, some of whom are based in Illinois (but none of whom Realtime Data had any contact with in the forum, including CBOE). However, in *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324 (Fed. Cir. 2008), the Federal Circuit Court of Appeals, whose law exclusively controls personal jurisdiction in this declaratory judgment patent action and all other patent cases, has recently expressly rejected that enforcement activities outside the forum, including the filing of a patent infringement suit against other companies in a different forum, are a sufficient basis for personal jurisdiction over a patentee:

> [Patentee] Aten International and its subsidiary have previously enforced the patents against other parties in the Eastern District of Texas [and other courts]. But Avocent has made no allegation that Aten International has attempted to enforce these patents in any Alabama court [where Avocent resides and filed its declaratory judgment action]. To the extent the dissent contends that Aten International's enforcement activities in *other fora* subject it to specific personal jurisdiction in Alabama, *we respectfully disagree*. We are aware of no precedent that holds that the filing of a suit in a

1

> particular state subjects that party to specific jurisdiction everywhere else.

*Id.* at 1339 (emphasis added). Indeed, while CBOE quotes from *Avocent* in its opposition brief to suggest that the Federal Circuit reached the opposite holding in *Avocent*, CBOE does so by cropping the quote. The full quote from *Avocent* is as follows (with underlining to show the portion of the quote that CBOE did not include in its brief):

> <u>While</u> the plaintiff need not be the forum resident toward whom any, much less all, of the defendant's relevant activities were purposefully directed, <u>we have consistently required the defendant to have engaged in "other activities" that relate to the enforcement or the defense of the validity of the relevant patents. Examples of these "other activities" include initiating judicial or extra-judicial patent enforcement ***within the forum***, or entering into an exclusive license agreement or other undertaking which imposes enforcement obligations with a party residing or regularly doing business *in the forum.*</u>

*Id.* at 1547 (emphasis added). Critically, the Federal Circuit mandates that a patentee's enforcement activities take place in the forum for personal jurisdiction in a declaratory judgment patent case. CBOE's reliance on *PharmaNet, Inc. v. DataSci LLC*, No. 08-2965, 2009 WL 396180 (D.N.J. Feb. 17, 2009) is misplaced as that case was briefed and argued prior to the Federal Circuit's decision in *Avocent* and, in any event, personal jurisdiction in that case was based on a number of factors, including activities in the forum (of which there are none for Realtime Data), not solely litigation in another forum.

In light of the Federal Circuit law which squarely rejects CBOE's theory of personal jurisdiction Realtime Data's motion to dismiss for lack of personal jurisdiction should be granted. Moreover, proceeding in this forum with CBOE would not make sense in view of the first-filed litigation in Texas involving CBOE and other companies, the same patents, and the same accused products, the Texas court's wealth of experience over the past year and a half with

the patents at issue in another, earlier filed litigation scheduled for trial next month, and the significant burden that additional duplicative litigation would create for the parties.

## DISMISSAL BASED ON LACK OF PERSONAL JURISDICTION IS APPROPRIATE UNDER RULE 12(b)(2)

CBOE does not dispute that Realtime Data has no direct connections to Illinois and has never attempted to enforce patents within Illinois through litigation activities in Illinois (Fallon Decl. ¶¶ 4-12), nor does CBOE advance argument that this Court could exercise general personal jurisdiction over Realtime Data. Rather, CBOE asserts only a single tenuous link between Realtime Data and Illinois: Realtime Data's patent litigation in Texas naming several defendants, some of whom reside in Illinois. CBOE's argument that such enforcement activities outside Illinois give rise to personal jurisdiction over Realtime Data in Illinois is far too attenuated. *See Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985) (personal jurisdiction requires more than "'random,' 'fortuitous,' or 'attenuated' contacts").

As discussed above, the Federal Circuit Court of Appeals recently considered and rejected the same argument for personal jurisdiction that CBOE advances in this case—enforcement activities by the defendant patent holder in other fora. In *Avocent*, a Taiwanese company, Aten International, had previously filed patent enforcement actions in Texas, California, and the International Trade Commission (located in Washington D.C.). *Id.* at 1339. In response, Avocent, based in Alabama, filed a declaratory judgment action in the Northern District of Alabama. Affirming the district court and finding that the Alabama court lacked personal jurisdiction, the Federal Circuit emphasized that personal jurisdiction in such suits requires that the defendant engage in activities in the forum "that relate to the enforcement or the defense of the validity of the relevant patents." *Id.* at 1334. Such activities include "initiating judicial or extra-judicial patent enforcement *within the forum*, or entering into an exclusive

license agreement or other undertaking which imposes enforcement obligations with a party residing or regularly doing business *in the forum*." *Id.* (emphasis added). Realtime Data has not engaged in any such activities in Illinois. Patent enforcement activities outside the forum cannot subject the patentee to personal jurisdiction. The Federal Circuit squarely rejected the argument that jurisdiction could be predicated on the patentee's enforcement actions in other fora. *Id.* at 1339 (citation omitted). Similarly, here, Realtime Data's enforcement action in Texas cannot subject it to specific personal jurisdiction in Illinois where it has engaged in no such activities, and has never had any presence whatsoever in Illinois.

The Federal Circuit has gone beyond the *Avocent* rule and even rejected licensing activities by a patentee in the forum as a basis for personal jurisdiction over a patentee for purposes of a declaratory judgment action. For example, in a subsequent Federal Circuit case, *Autogenomics, Inc. v. Oxford Technology Ltd*, 566 F.3d 1012 (Fed. Cir. 2009), a non-resident had instituted a licensing program in California and entered into licensing agreements with about ten California companies. *Id.* at 1015. The Federal circuit found such activities too tenuous to give rise to personal jurisdiction over a patentee for purposes of a declaratory judgment action, i.e., where specific personal jurisdiction must arise from activities in the state that give rise to a threat of potential patent infringement litigation against the plaintiff or the defendant patentee or its exclusive licensee (having the enforcement rights of the patentee) is present. The Federal Circuit held that a California court lacked jurisdiction over the non-resident patentee because there were no enforcement actions brought in the forum and none of the licenses were exclusive, as required by the *Avocent* rule. *Id.* at 1021.

CBOE's reliance on *PharmaNet, Inc. v. DataSci LLC*, No. 08-2965, 2009 WL 396180 (D.N.J. Feb. 17, 2009), to support personal jurisdiction is inapposite. In *PharmaNet*, the New

4

Jersey court found specific personal jurisdiction over the defendant patentee in a declaratory judgment action based, in part, on a patent enforcement suit filed by the defendant patentee in Maryland. *Avocent* was decided approximately two months before *PharmaNet*. (Cooper Decl. Ex. 1.) Critically, however, briefing and oral argument were complete in *PharmaNet* before the *Avocent* decision was rendered and the New Jersey court was unaware of the Federal Circuit's decision. The *PharmaNet* holding should be accorded no weight in light of the clear rule in the controlling *Avocent* decision from the Federal Circuit that enforcement activities outside the forum are not sufficient to give rise to personal jurisdiction over a patentee in a declaratory judgment action.[1] *Avocent*, 552 F.3d at 1334. Thus, CBOE's reliance on *PharmaNet* is misplaced and that decision cannot be afforded any consideration under the current state of the law.

Similarly, CBOE's reliance on *Campbell Pet Co. v. Miale*, 542 F.3d 879 (Fed. Cir. 2008) is also unavailing, as it simply stands for the uncontroversial proposition that a defendant's personal presence and patent enforcement actions *in the forum* state may serve as a basis for personal jurisdiction. In *Campbell Pet,* one defendant, Ms. Miale, had previously travelled to the forum state, Washington, to enforce the defendants' patents at a Seattle trade show. The Federal Circuit concluded that "Ms. Miale's attempts at 'extra-judicial patent enforcement' were targeted at Campbell's business activities in Washington and can fairly be characterized as attempts to limit competition from Campbell at the Seattle Convention." *Id.* at 886. Thus, "Ms. Miale's efforts at private enforcement occurred *within the forum state* and while she was personally present there." Id. at 887 (emphasis added). On the contrary, it is not disputed that Realtime

---

[1] In *PharmaNet*, the New Jersey court's additional basis for personal jurisdiction—the non-exclusive licensing agreement—is also erroneous in light of *Avocent*. *Avocent* holds that only an *exclusive* license to a forum resident may support personal jurisdiction. *Id.* at 1334.

5

Data has never entered Illinois or attempted to enforce its patents in Illinois. (Fallon Decl. ¶¶ 4-12.)

Plaintiff simply cannot overcome the holding of *Avocent* that only enforcement activities "within the forum" can give rise to personal jurisdiction. *Avocent*, 552 F.3d at 1334. Realtime Data has never engaged in such enforcement activities in Illinois.

In addition, Realtime Data's Texas action was first-filed and this action is second-filed, contrary to plaintiff's assertion. (Op. Br. at 3.) Thus, to the extent that CBOE argues that the Texas case supports personal jurisdiction in this Court, the first-filed Texas court must determine whether litigation should be transferred out of Texas to this forum. The Texas action was filed on July 22, 2009, and the action in this court was filed on July 24, 2009. The Texas action did not initially name CBOE as a defendant, but did name the Options Price Reporting Authority ("OPRA") which is by CBOE's own admission in the opposition to Realtime Data's motion to dismiss for lack of personal jurisdiction is a related entity. (Op. Br. at 4 ("CBOE is a constituent of OPRA, owns a one-seventh interest in OPRA, and elects members to the board of OPRA").) Moreover, because of the complete overlap in the two cases of the patents-in-suit, the subject matter, and the accused products, the Texas action is considered first-filed. *See Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) ("a suit is duplicative if the 'claims, parties, and available relief do not significantly differ between the two actions.'"); *Guan Gao Co. v. Acco Brands Corp.*, No. 06 Civ. 8208, 2007 WL 747795 (S.D.N.Y. March 9, 2007) (dismissing second-filed action where the interests of the parties in the second-filed action were clearly aligned with parties in the first-filed action, even though the parties were not identical); *Centocor, Inc. v. MedImmune, Inc.*, No. C 02-03252, 2002 WL 31465299, at *3 (N.D. Cal. Oct.

6

22, 2002) (courts dismissing second-filed actions "generally do not require identical issues or parties so long as the actions involve closely related questions or common subject matter.").

Finally, it should be noted that Realtime Data has had litigation pending in Texas on the same patents at issue in this litigation since April 2008. During the past year and a half the Texas court has gained extensive experience with the patents and substantive issues in this case, including importantly the completion of a claim construction hearing, the issuance of a claim construction ruling covering the same patents that are at issue in this litigation, and the ruling on numerous summary judgment and other pre-trial motions in advance of the trial scheduled for next month. (Cooper Decl. Ex. 2.) Further, the first-filed Texas litigation includes not just CBOE but other defendants as well who are located in Texas, California, New York, Boston, Philadelphia, and elsewhere. Allowing the instant case to continue would create unnecessary duplicative litigation and consume limited judicial resources.

## CONCLUSION

For the foregoing reasons and those set forth in our moving papers, the Court should dismiss this action for lack of personal jurisdiction.

DATED: December 8, 2009          Respectfully submitted,


   *s/ Brett E. Cooper*
George N. Vurdelja, Jr. (Attorney ID No. 6181504)
gvurdelja@harrisonheld.com
John M. Heaphy (Attorney ID No. 6180586)
jheaphy@harrisonheld.com
**HARRISON & HELD, L.L.P.**
333 S. Wacker, Suite 1700
Chicago, IL 60606
Telephone: (312) 332-1111
Facsimile: (312) 332-1150

Robert A. Cote (Attorney ID No. 2331957)
rcote@mckoolsmith.com
Brett E. Cooper (admitted *pro hac vice*)
bcooper@mckoolsmith.com
**McKOOL SMITH, P.C.**
One Bryant Park, 47th Floor
New York, NY 10036
Telephone: (212) 402-9400
Facsimile: (212) 402-9444

John M. Shumaker (admitted *pro hac vice*)
jshumaker@mckoolsmith.com
**McKOOL SMITH, P.C.**
300 W. 6th Street, Suite 1700
Austin, TX 78701
Telephone: (512) 692-8700
Facsimile: (512) 692-8744

**ATTORNEYS FOR DEFENDANT
REALTIME DATA, LLC D/B/A IXO**

**CERTIFICATE OF SERVICE**

I hereby certify that on December 8, 2009, I electronically filed **Defendant's Reply Memorandum in Support of its Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2)** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

> David Francescani
> francescani@fr.com
> Michael T. Zoppo
> mtz@fr.com
> Fish & Richardson P.C.
> 601 Lexington Avenue - 52nd Floor
> New York, NY 10022
>
> Paul E. Dengel
> pdengel@schiffhardin.com
> Stacie R. Hartman
> shartman@schiffhardin.com
> Schiff Hardin LLP
> 6600 Sears Tower
> Chicago, IL 60606

                                            *s/ Brett E. Cooper*
                                            Brett E. Cooper

Not Reported in F.Supp.2d, 2002 WL 31465299 (N.D.Cal.)
**(Cite as: 2002 WL 31465299 (N.D.Cal.))**

Only the Westlaw citation is currently available.

United States District Court,
N.D. California.
CENTOCOR, INC., et al., Plaintiff,
v.
MEDIMMUNE, INC., Defendant.
**No. C 02-03252 CRB.**

Oct. 22, 2002.

Owners and exclusive licensee of patent on process to produce immunoglobulins brought action against sublicensee, seeking declarations that sublicensee infringed claims of the patent, that the claims of the patent were valid and enforceable, and that sublicensee was obligated to pay royalties under the parties' sublicense agreement. Sublicensee moved to dismiss complaint. The District Court, Breyer, J., held that: (1) because sublicensee was performing its obligations under the sublicense, future infringement was unlikely, and no "actual controversy" existed, and (2) given pending Maryland action, first-to-file doctrine applied, and plaintiffs failed to demonstrate the existence of "special circumstances" that would support adjudication of this second-filed complaint.

Motion to dismiss granted.

West Headnotes

**[1] Declaratory Judgment 118A ⇌233**

118A Declaratory Judgment
    118AII Subjects of Declaratory Relief
        118AII(L) Patents
            118Ak231 Patents
                118Ak233 k. Infringement of Patents.
Most Cited Cases
Owners and exclusive licensee of patent on process to produce immunoglobulins who brought suit against sublicensee that was manufacturing antibody alleging patent infringement failed to meet actual controversy requirement necessary to maintain suit under the Declaratory Judgment Act, where, although sublicensee was admittedly "making, selling, or using" a product that may have been covered by the subject patent, it was doing so with a valid license, and it was continuing to perform its obligations under the sublicense agreement. 28 U.S.C.A. § 2201.

**[2] Federal Courts 170B ⇌1145**

170B Federal Courts
    170BXIII Concurrent and Conflicting Jurisdiction and Comity as Between Federal Courts
        170Bk1145 k. Pendency and Scope of Prior Proceedings; Prisoners Under Arrest. Most Cited Cases
Where sublicensee of patent on process to produce immunoglobulins had brought declaratory judgment action against licensee in federal court in Maryland, first-to-file doctrine applied to preclude subsequent action by patent owners and licensee against sublicensee in federal court in California; sublicensee offered to allow patent owners to intervene in the Maryland action, and patent owners and licensee failed to demonstrate the existence of "special circumstances" supporting adjudication of the second-filed complaint.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

BREYER, J.

*1 Now before the Court is defendant Medimmune, Inc.'s Motion to Dismiss the Complaint filed against it. For the reasons stated herein, the Court GRANTS defendant's motion.

BACKGROUND

In 1992, Stanford and Columbia Universities granted Centocor an exclusive license on Patent '715, a

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

process to produce immunoglobulins. Under the license, Centocor has the right to sublicense the patented process. Some time thereafter, Centocor contacted MedImmune regarding MedImmune's product, Synagis, a monoclonal antibody which targets infant respiratory viruses. Centocor claimed that its patent covered Synagis and that absent a sublicense, MedImmune would be infringing that patent Although MedImmune believed the patent was invalid and not infringed by its product, it did not want to risk an infringement claim. On September 15, 2000, MedImmune applied for and was granted a non-exclusive sublicense to make, use, offer for sale, sell and import products covered by the '715 patent. Under the agreement, MedImmune is required to pay royalties to Centocor for sales of Synagis. MedImmune continues to pay those royalties and remains in full compliance with its obligations under the license.

In April 2002, MedImmune filed an action in United States District Court for the District of Maryland seeking a declaration of its rights and obligations under the sublicense agreement and a declaration that the '715 patent is invalid or unenforceable. Centocor has filed a motion to dismiss in the Maryland action for failure to join the universities, the owners of the patent. In response, MedImmune informed the universities that it had no objection if they wished to intervene. One day later, the universities and Centocor filed the Complaint in this case.

Plaintiffs seek declarations from this Court that: (1) MedImmune infringes valid and enforceable claims of the '715 patent; (2) the claims of the '715 patent are valid; (3) the claims of the '715 patent are enforceable; and (4) MedImmune has an obligation to pay royalties under the sublicense agreement. Defendant has filed a Motion to Dismiss the Complaint for failure to state a claim, or in the alternative, under the first-to-file rule.

DISCUSSION

A. *The Actual Controversy Requirement*

Plaintiffs seek declaratory relief pursuant to 28 U.S.C. § 2201, the Declaratory Judgment Act. Under the Act, there must be an "actual controversy" between the parties before a federal court may exercise jurisdiction. *See* 28 U.S.C. § 2201. The initial burden of establishing the trial court's jurisdiction rests on the party invoking that jurisdiction. *Cardinal Chem. Co. v. Morton Int'l, Inc.,* 508 U.S. 83, 98, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993). The threshold question, then, is whether plaintiffs have established that an actual controversy exists.

Most declaratory actions in the patent field are brought by manufacturers of allegedly infringing products against patent owners after manufacture has already begun. *See, e.g., Cordis Corp. v. Medtronic, Inc.,* 835 F.2d 859, 862 (Fed.Cir.1987); *Goodyear Tire & Rubber Co. v. Releasomers, Inc.,* 824 F.2d 953, 955 (Fed.Cir.1987). Such actions allow a manufacturer to determine whether its product would infringe a patented invention without waiting until the patent owner finds it convenient to file suit. Here, the situation is reversed. It is the *owners* of the '715 patent who are asking the Court to declare the patent valid and potentially infringed.[FN1] Although it is unusual for a court to grant declaratory relief to a patent owner, the Federal Circuit has acknowledged that in rare cases, such relief may be appropriate. *See Lang v. Pac. Marine & Supply Co., Ltd.,* 895 F.2d 761, 764 (Fed.Cir.1990).

> FN1. Although the Complaint seeks a declaration that MedImmune "infringes valid and enforceable claims of the '715 claims," plaintiffs are actually requesting a declaration that MedImmune's activities "would infringe" the patent should it stop paying royalties. *See* Pls.' Opp'n to Mot. to Dismiss at 6. Thus, *Lang* applies.

**\*2** In *Lang,* the Federal Circuit ruled that a patentee can bring a declaratory judgment action against a potential future infringer provided that there is a

"true, actual controversy." *Id.* This requirement is met by "a sufficient allegation of immediacy and reality." *Id.* The *Lang* court set out a two-prong test designed to satisfy the justiciability requirement of the Declaratory Judgment Act. First, the defendant must be engaged in, or making meaningful preparations for engagement in, an activity directed toward making, selling, or using a patented invention. *Id* . Second, the acts of the defendant must indicate a refusal to change the course of its actions in the face of acts by the patentee sufficient to create a reasonable apprehension that a suit will be forthcoming. *Id.*

[1] Here, the Federal Circuit's two-prong test is not satisfied. Although MedImmune is admittedly "making, selling, or using" a product that may be covered by the '715 patent, it is doing so with a *valid license.* Plaintiffs acknowledge that MedImmune continues to perform its obligations under the sublicense agreement. *See* Pls.' Opp'n to Mot. to Dismiss at 7. Nonetheless, they contend that an actual controversy exists because the defendant has filed an action in Maryland to have the patent declared invalid. But plaintiffs have cited no cases in which the filing of a lawsuit established that the defendant was "making meaningful preparation" to infringe. In fact, MedImmune's filing of the Maryland action would seem to indicate just the opposite. By continuing to maintain its obligations under the licensing agreement, MedImmune has demonstrated its willingness to follow the proper legal channels to ensure it that will *not* infringe should it stop paying royalties. The fact that MedImmune obtained a license in the first place, despite its belief that its product did not infringe the patent, is further evidence of its desire to avoid infringement.

Essentially, plaintiffs ask this Court to declare its patent valid just in case the defendant licensee, at some undetermined point in the future, stops complying with the terms of the license. But plaintiffs do not and cannot cite any cases in which a court has issued a declaratory judgment to stop such an uncertain future act. In fact, courts rarely afford declaratory relief to the patent owner, even when the likelihood of future infringement is much greater than it is here. In *Lang,* for example, the owners of two patents that pertained to features of a ship's hull brought a declaratory judgment action against a shipbuilder in the process of constructing a ship hull. *See Lang,* 895 F.2d at 763. The plaintiffs claimed the hull, when completed, would infringe the patents. The court held that the plaintiffs failed to meet the actual controversy requirement because the hull would not be completed for at least another nine months. *See id.* at 764.

Similarly, in *Intermedics, Inc. v. Ventritex, Inc.,* 775 F.Supp. 1269 (N.D.Cal.1991), the court declined to exercise jurisdiction of a declaratory judgment claim when the possibility of FDA approval of the product at issue would have taken a year or more from the time that plaintiffs filed their complaint. *See id.* at 1289-90; *see also Amgen, Inc. v. Hoechst Marion Roussel, Inc.,* 3 F.Supp.2d 104 (D.Mass.1998) (declining to exercise jurisdiction to issue declaratory judgment when FDA approval was uncertain and the process itself was subject to alteration prior to approval); *Abbott Labs. v. Zenith Labs., Inc.,* 934 F.Supp. 925 (N.D.Ill.1995) (declining to exercise jurisdiction when alleged future infringer did not have FDA approval for its generic drug and had never indicated it planned to enter patentee's market).

*3 Here, future infringement is not only uncertain but unlikely. Should the Maryland court rule in favor of MedImmune and declare the '715 patent invalid, MedImmune would be free to stop its royalty payments to Centocor because there would be no patent to infringe. Should the court rule in favor of Centocor, there is no indication that MedImmune would discontinue performance of its obligations under the sublicense and thus infringe the patent. In short, there is no immediate and real threat of infringement to justify declaratory relief at this time.

Even had plaintiffs met their burden of showing the existence of an actual controversy, the Court has discretion to decline jurisdiction if it feels the ac-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31465299 (N.D.Cal.)
**(Cite as: 2002 WL 31465299 (N.D.Cal.))**

tion will serve no useful purpose. *See Spectronics Corp. v. H.B. Fuller Co., Inc.,* 940 F.2d 631, 634 (Fed.Cir.1991). Many courts decline to exercise jurisdiction when, as here, a suit between the same parties is pending in another forum. *See, e.g., Intermedics Infusaid, Inc. v. Univ. of Minn.,* 804 F.2d 129 (Fed.Cir.1986); *Int'l Harvester Co. v. Deere & Co.,* 623 F.2d 1207 (7th Cir.1980); *Aluminum Housewares Co. v. Chip Clip Corp.,* 609 F.Supp. 358 (E.D.Mo.1984).

Plaintiffs readily admit this case mirrors MedImmune's first-filed Maryland action. *See* Pls.' Opp'n to Mot. to Dismiss at 6-7. The complaints differ only insofar as the universities have been named as parties to the case at bar. Still, plaintiffs assert arguments in favor of allowing this action to go forward. First, they contend that the universities are necessary and indispensable parties to this dispute, but are not named as defendants in the Maryland action. Second, plaintiffs contend that Maryland is an improper forum for the original action because the court lacks personal jurisdiction over the universities.

Whether or not plaintiffs' arguments have merit is not for this Court to decide. Rather, those issues properly belong before the Maryland court; in fact, the parties' motions on those very topics are now pending before that court. For purposes of this action, there is no actual controversy to satisfy the Declaratory Judgment Act.

B. *The First-To-File Rule*

[2] Under the first-to-file doctrine, it is "a principle of sound judicial administration [that] the first suit should have priority, absent special circumstances.... Restraint of the first-filed suit is made only to prevent wrong or injustice...." *Kahn v. Gen. Motors Corp.,* 889 F.2d 1078, 1081 (Fed.Cir.1989). The party filing the second action must demonstrate the existence of special circumstances to overcome the strong presumption in favor of the first-filed action. *See id.* at 1081-83; *Applied Vision Inc. v. Op-*

*tical Coating Lab., Inc.,* No. C 97-1233, 1997 WL 601425 at *2 (N.D.Cal.1997).

Here, plaintiffs argue that the rule does not apply because the universities are not named as parties to the Maryland action. While acknowledging that the issues involved in this case mirror those in the Maryland action, plaintiffs claim that any adjudication of the '715 patent without the universities would be incomplete and prejudicial. But plaintiffs' argument ignores the fact that courts generally do not require identical issues or parties so long as the actions involve closely related questions or common subject matter. *See, e.g., Guthy-Renker-Fitness L.L.C. v. Icon Health & Fitness Inc.,* 46 U.S.P.Q.2d 1344, 1346 (C.D.Cal.1998) ("When two actions involving similar parties and issues are commenced in separate forums ... preference is given to the first-filed plaintiff's choice of forum under the 'first-to-file' rule."); *Texas Instruments Inc. v. Micron Semiconductor, Inc.,* 815 F.Supp. 994, 997 (E.D.Tex.1993) ("[A]ll that need be present is that the two actions involve closely related questions or common subject matter, or that the core issues substantially overlap. The cases need not be identical...."); *Marshak v. Reed,* No. 96 CV 2292, 2000 WL 33152076, at *3 (E.D.N.Y.2000) (invoking the first-to-file rule when the second action involved additional parties since "[p]arties whose interests are clearly aligned may be treated as if they were the same parties"). Plaintiffs' argument is rendered even less compelling by defendant's offer to allow the universities to intervene in the Maryland action.

**\*4** Finally, plaintiffs argue that the first-to-file rule does not apply because there is sound reason for a change in forum. As noted above, however, the issue of forum properly belongs before the Maryland court. "If the second-filed court is demonstrably more convenient for the parties and witnesses, a motion to transfer under Section 1404(a) should be addressed to the *first-filed* court." 8 Donald S. Chisum, *Chisum on Patents* § 21.02[4][b] (2002) (emphasis added).

In short, plaintiffs have failed to demonstrate the

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31465299 (N.D.Cal.)
**(Cite as: 2002 WL 31465299 (N.D.Cal.))**

existence of "special circumstances" that would support adjudication of this second-filed complaint.

### CONCLUSION

For the reasons stated above, defendant's Motion to Dismiss is hereby GRANTED.

IT IS SO ORDERED.

N.D.Cal.,2002.
Centocor, Inc. v. MedImmune, Inc.
Not Reported in F.Supp.2d, 2002 WL 31465299 (N.D.Cal.)

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

# SLIP SHEET

Not Reported in F.Supp.2d, 2007 WL 747795 (S.D.N.Y.)
**(Cite as: 2007 WL 747795 (S.D.N.Y.))**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
GUAN GAO COMPANY, LTD. d/b/a Polox Company, Ltd. and Noble Security, Inc., Plaintiffs,
v.
ACCO BRANDS CORPORATION, Defendant.
**No. 06 Civ. 8208(JSR).**

March 9, 2007.

*MEMORANDUM*

RAKOFF, J.

**\*1** By motion dated December 15, 2006, defendant moved, pursuant to the first-filed rule and 28 U.S.C. § 1404(a), to transfer this action to the United States District Court for the Northern District of Illinois, where a case involving related parties, facts, and claims is proceeding before the Honorable James B. Zagel, U.S.D.J. By Order dated January 19, 2007, the Court granted defendant's motion and directed the Clerk to take the necessary steps to effectuate the transfer. This Memorandum gives the reasons for that ruling.

By way of background, plaintiffs Polox Co. Ltd. ("Polox") and Noble Security, Inc. ("NSI") filed the instant action against defendant Acco Brands Corp. ("Acco") on October 6, 2006 seeking, *inter alia,* a declaratory judgment that two of Acco's patents (the " '403" and " '479" patents) are invalid. *See* Complaint ¶ 49. Acco (based in Illinois) and NSI (based in Texas) sell cylinder locks used in computer security, *see* Complaint ¶¶ 3-4, and Polox (based in Taiwan) is a manufacturer of computer locks that supplies NSI, *see* Complaint ¶ 2; *see also* Defendant's Memorandum In Support Of Its Motion to Transfer ("Def.Mem.") Ex. K (Declaration of Meir Avganim dated September 13, 2005) ¶ 5.

These parties, or related entities, have been involved in litigation for some six years.

Initially, in 2000, Acco brought in the Northern District of California an action against Noble Security Systems, Inc. ("NSSI"), a California corporation that also markets cylinder locks. The action alleged infringement of two other patents, the " '989" and the " '557" patents. In 2001, Acco and NSSI entered a settlement agreement and the California action was dismissed. Def. Mem. Ex. E ("California Settlement Agreement"). NSSI admitted in that settlement agreement that certain of its computer locks infringed Acco's patents, agreed to pay Acco a lump-sum payment, and agreed to refrain from making, using, or selling the infringing products. *Id.* The agreement covered NSSI's "officers, agents, servants, employees, attorneys and those persons in active concert or participation with them." *Id.* at 2.

Next, in 2003, Acco filed suit against NSSI and two related entities-Office Security Solutions, Inc. ("OSSI") and SecuComputer, Inc. ("SecuComputer"). This suit was filed in the Northern District of Illinois and was assigned to Judge Zagel. It alleged infringement of the two patents involved in the California action (the '989 and '557 patents) and breach of the California Settlement Agreement. Def. Mem. Ex. F ("Illinois Complaint") ¶¶ 22-37. Judge Zagel initially entered default judgments against these defendants, Def. Mem. Ex. G, but thereafter granted a motion by NSSI and OSSI to vacate the default judgments against them, and the action proceeded. Def. Mem. Exs. H, I.[FN1]

> FN1. SecuComputer apparently remains in default. Def. Mem. at 3 n. 3; *see also* Plaintiffs' Opposition To Defendant's Motion to Transfer ("Pl. Opp'n Mem.") at 9; Declaration of Meir Avganim dated December 29, 2006 ("Avganim Decl.") ¶ 19.

Thereafter, on October 6, 2006, plaintiffs filed the

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 747795 (S.D.N.Y.)
**(Cite as: 2007 WL 747795 (S.D.N.Y.))**

Complaint in the instant action. By motion dated December 15, 2006, defendant moved this Court to transfer this case to the Northern District of Illinois on the ground that both the first-filed rule and the relevant factors under 28 U.S.C. § 1404(a) favor such a transfer. This Memorandum will address each of these arguments in turn.

**\*2** Under the first-filed rule, when two district courts concurrently have before them actions involving the same parties and issues, there is "a strong presumption in favor of the forum of the first-filed suit" unless either the balance of convenience or any other "special circumstances" clearly favor the latter-filed action. *800-Flowers, Inc. v. Intercontinental Florist, Inc.,* 860 F.Supp. 128, 131-32 (S.D.N.Y.1994); *City of New York v. Exxon Corp.,* 932 F.2d 1020, 1025 (2d Cir.1991). "To overcome the preference for the forum of the first-filed suit, a sound reason must exist that would make it unjust or inefficient to continue the first-filed action." *Findwhat.com v. Overture Servs., Inc.,* 2003 WL 402649, at \*4 (S.D.N.Y.2003).

Plaintiffs offer two primary reasons to depart from the first-filed rule:

*First,* plaintiffs argue that they (NSI and Polox) are unrelated to the parties in the Illinois action (NSSI and OSSI). Pl. Opp'n Mem. at 8. The mere fact that the parties in the two lawsuits are not identical is not dispositive; the instant action and the Illinois action may be considered duplicative as long as the parties involved in the two suits "represent the same interests." *The Haytian Republic,* 154 U.S. 118, 124 (1894); *see, e.g., Howard v. Klynveld Peat Marwick Goerdeler,* 977 F.Supp. 654, 664 (S.D.N.Y.1997) ("if the parties 'represent the same interests' the court may determine the second action to be duplicative") (quoting *The Haytian Republic,* 154 U.S. at 124). Plaintiffs argue, however, that the parties involved in the two actions do not represent the same interests. That argument, however, does not withstand scrutiny. NSI, NSSI, and OSSI are all owned by members of the Avganim family and are all effectively controlled by an individual named

Meir Avganim. In a declaration dated November 22, 2005, Meir Avganim stated that his son owns NSSI, Def. Mem. Ex. J ¶ 1, that his cousin owns OSSI, *id.,* that his sister-in-law owns NSI, *id.,* and that "I am and have at all relevant times been the person in overall charge of the Noble companies' business worldwide," *id.* ¶ 11. Further, in a declaration dated September 13, 2005, Avganim stated that the other plaintiff here, Polox, is the supplier of the Noble entities, which "manufacture[s] parts to my specifications." Def. Mem. Ex. K ¶ 5. Further still, the 2001 settlement agreement at issue in the Illinois action, which is between NSSI (a defendant in Illinois) and Acco (the defendant here and the plaintiff in Illinois), explicitly binds "those persons in active concert or participation with" NSSI, California Settlement Agreement at 2, and this broad language doubtless includes NSI and Polox, the plaintiffs here. Thus, the interests of Polox and NSI here and NSSI and OSSI in Illinois are effectively aligned.[FN2]

> FN2. Plaintiffs argue that the Illinois action may not qualify as the "first filed" because if Acco files its proposed second amended complaint there, which proposes to add NSI and Polox as defendants in that action, that amended complaint would be filed after the Complaint in the instant action, and could not be held to relate back to the original complaint there under Fed.R.Civ.P. 15(c). Pl. Opp'n Mem. at 10-12. However, "[c]ourts have generally held that Rule 15(c) is satisfied where the original party and added party have a close identity of interests." *In re Integrated Res. Real Estate Ltd. P'ships Sec. Litig.,* 815 F.Supp. 620, 646 (S.D.N .Y.1993). Thus, the Court's finding that the parties here and in the Illinois action have a close identity of interests also constitutes a finding that a proposed amended complaint in the Illinois action naming NSI and Polox could be deemed to relate back to the original complaint in that action.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 747795 (S.D.N.Y.)
**(Cite as: 2007 WL 747795 (S.D.N.Y.))**

*Second,* plaintiffs argue that the issues in the instant action and the Illinois action are different because the Illinois action involves that '989 and the '557 patents, issued in 1996 and 1999, respectively, and the instant case involves the '403 and '479 patents, which were issued in 2006, and therefore did not even exist when Acco originally filed the Illinois action in 2003. Pl. Opp'n Mem. at 9; *see also* transcript, 1/16/07, at 3-5. But plaintiffs admit that all four of these patents, which issued between 1994 and 2006, are based on the same parent patent applications filed in 1992 and 1993, *see* transcript, 1/16/07, at 3-4; Complaint ¶ 15 (noting that Acco "has since parlayed th[e] original patent application into numerous issued patents"); Pl. Opp'n Mem. at 2. In such circumstances, the fundamental issues are sufficiently identical to warrant transfer. *See Brunswick Corp. v. Precor Inc.,* 2000 WL 1876477, at *3 (D.Del.2000) (granting transfer where "there has already been litigation [in the transferee court] on the '207 patent, a parent patent of the one at issue here").

**\*3** Accordingly, transfer is warranted under the first-filed rule. Independently, though for partly related reasons, transfer is also warranted under 28 U.S.C. § 1404(a).

Under § 1404(a), a district court may transfer any civil action to any other federal district court where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). *See, e.g., In re Cuyahoga Equip. Corp.,* 980 F.2d 110, 117 (2d Cir.1992). Since there is no question that this action could have been brought in the Northern District of Illinois, the Court turns to the standard list of factors that bear on a § 1404 transfer:

(1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity

with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of circumstances.

*Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.,* 11 F.Supp.2d 729, 730 (S.D.N.Y.1998). The factors need not be accorded equal weight, and other factors may be considered. *Id.* Here, however, the balance of factors clearly points toward transfer-for this case has much to do with the Northern District of Illinois and almost nothing to do with the Southern District of New York.

As to the first factor, *i.e.,* the "convenience of witnesses," defendant has identified three likely witnesses who are located in Illinois and six likely witnesses who are located in California, each of whom would be understandably more inconvenienced by a New York forum than an Illinois forum. By contrast, the only specific witness for whom plaintiffs assert that New York is more convenient than Illinois is Mr. Avganim, who is resides in Israel. But the fact that Mr. Avganim's trip from Israel to Illinois may be slightly longer or more expensive than the trip to New York is of limited materiality, *cf., e.g., Bionx Implants, Inc. v. Biomet, Inc.,* 1999 WL 342306, at *3 (S.D.N.Y.1999), particularly in light of the fact that Mr. Avganim will likely need to travel to Illinois to participate in the parallel action there in any event, regardless of whether the present action goes forward, *see* transcript, 1/16/07, at 35. Thus, the first factor weighs in favor of transfer.

As to the second factor, *i.e.,* the "location of relevant documents and relative ease of access to sources of proof," defendant's headquarters is located in the Northern District of Illinois and defendant's relevant division is located in California, so that, as defendant argues, defendant's documents are more easily obtainable in Illinois than in New York. Def. Mem. at 14. By contrast, the only documents that plaintiffs assert are in New York are those that "are located with ... [plaintiffs'] attor-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

neys" in New York. Pl. Opp'n Mem. at 18. But courts "accord[ ] little weight to the convenience of plaintiffs' attorneys," *Bordiga v. Directors Guild of America,* 159 F.R.D. 457, 463 (S.D.N.Y.1995), and the fact that plaintiffs' attorneys have chosen to maintain plaintiffs' documents in this District is thus of limited materiality here. Thus, the second factor also weighs in favor of transfer.

**\*4** As to the third factor, *i.e.,* the convenience of the parties, plaintiffs once again rely on the assertion that it is easier for their principal, Mr. Avganim, to travel from Israel to New York than from Israel to Chicago. As already discussed, the difference is immaterial. Likewise, plaintiff's assertion that New York is more convenient to their counsel is, as previously noted, immaterial. By contrast, as also discussed, defendant's significant locations are in Illinois and California. So, once again, the factor tips in favor of transfer.

As to the fourth factor, *i.e.,* the "locus of the operative facts," plaintiffs argue only that this factor is "neutral" because plaintiffs' primary customers are in California and Texas, but not in Illinois. *See* Pl. Opp'n Mem. at 20. But, at least, Illinois is closer to being the locus of operative facts, where this case has virtually no connection to the Southern District of New York, where defendant's headquarters is in Illinois, and where defendant and two Noble entities are already engaged in litigation in Illinois.

The fifth factor, *i.e.,* the availability of process to compel the availability of unwilling witnesses, is neutral, as none of the parties here has identified relevant witnesses as to whom this factor would be material.

As to the sixth factor, *i.e.,* the parties' relative means, plaintiffs have pointed to no reason, other than potential delay, why litigation in the Northern District of Illinois would be significantly more expensive than litigation in the Southern District of New York, and this factor is neutral as a result.

The seventh factor, *i.e.,* the forums' respective familiarity with the governing law, is of no significance in the context of this case because, as plaintiffs concede, *see* Pl. Opp'n Mem. at 21, both courts are equally capable of hearing this patent action grounded in federal law.

As to the eighth factor, *i.e.,* a plaintiff's choice of forum, while this factor is normally accorded considerable weight, *see, e.g., Ford Motor Co. v. Ryan,* 182 F.2d 329, 330 (2d Cir.1950), in the circumstances here, where neither the plaintiffs nor their principal resides in New York, and where the connection between the case and the Southern District of New York is virtually nonexistent, plaintiffs' choice of forum is entitled to less deference and is not sufficient in itself to prevent transfer, *see, e.g., Herbert v. Elec. Arts, Inc.,* 325 F.Supp.2d 282, 291 (S.D.N.Y.2004).

Finally, the ninth factor, involving "trial efficiency," is also neutral here.

In sum, the balance of factors clearly tips toward transfer.

Accordingly, both pursuant to the first-filed rule and pursuant to § 1404(a), the Court issued its order of January 19, 2007 granting defendant's motion to transfer.

S.D.N.Y.,2007.
Guan Gao Co., Ltd. v. Acco Brands Corp.
Not Reported in F.Supp.2d, 2007 WL 747795 (S.D.N.Y.)

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.